CLERKS OFFICE U.S. DIST. COURT
AT ABINGDON, VA
FILED
8/30/21
JULIA C. DUDLEY, CLERK
BY: s/ ELLA SURBER
     DEPUTY CLERK

IN THE
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
BIG STONE GAP DIVISION

| | |
|---|---|
| HALEY MARIE CANTRELL ADKINS | PLAINTIFF |
| ANDREW JORDAN ADKINS | PLAINTIFF |
| v. | Civil Action No. 2:21CV31 |
| COMMONWEALTH OF VIRGINIA | DEFENDANT |
| PAULA MEADE HILL COLLINS | DEFENDANT |
| MICHAEL MEADE | DEFENDANT |

## COMPLAINT

COMES NOW, Haley Marie Adkins and Andrew Adkins, by Counsel, and hereby submits the following in support of their Complaint.

### PARTIES

1. Haley Marie Adkins and Andrew Adkins are citizens of Virginia, and reside in Wise County, Virginia.

2. Paula Meade Hill Collins and Michael Meade are citizens of Virginia, and reside in Wise County, Virginia.

3. Haley Marie Cantrell Adkins is the biological mother of DSA, who is a Minor Child.

4. Andrew Jordan Adkins is the legal father of DSA, as a result of a Final Order of Adoption entered on July 30, 2021 by the Wise County Circuit Court.

5. Paula Meade Hill Collins is the biological mother of David Shane Meade.

6. Michael Meade is the adoptive father of David Shane Meade.

### JURISDICTION & VENUE

7. At all times relevant to this proceeding, the acts that give rise to this Complaint occurred and are occurring in Wise County Virginia.

8. Venue is proper pursuant to 28 USC §1391.

9. This Court has jurisdiction pursuant to 28 USC §1331.

10. This Court has jurisdiction of this matter pursuant 28 U.S.C. §1367 to address any pendent state claims.

## FACTS & LEGAL CONCLUSIONS

11. David Shane Meade was the biological father of DSA.

12. David Shane Meade died on January 6, 2020.

13. Prior to the death of the David Shane Meade, divorce proceedings were pending in the Wise County Circuit Court.

14. Prior to the death of the David Shane Meade, there were multiple Protective Orders entered by the Wise County Juvenile & Domestic Relations District Court against David Shane Meade in favor of Haley Adkins as a result of David Shane Meade's substance abuse.

15. Prior to the death of the David Shane Meade, David Shane Meade was the suspect in a firearms investigation where multiple gun shots were fired into the vehicle of his mother, Paula Meade Hill Collins.

16. Prior to the death of the David Shane Meade, David Shane Meade had limited contact with the Minor Child, and did not have overnight visitation with the Minor Child.

17. From early 2019, Haley Marie Cantrell Adkins had been the sole primary physical custodian of the minor child.

18. In June 2020, Paula Meade Hill Collins and Michael Meade filed Petitions in the Wise County Juvenile & Domestic Relations District Court seeking to have the Court Order Haley Marie Adkins to permit visitation with the Minor Child.

19. Haley Marie Adkins objected to the request, relying upon her Constitutional Rights, and other factors, including the mental instability of Paula Meade Hill Collins, the acrimonious relationship that existed between Paula Meade Hill Collins and her, the fact that Paula Meade Hill Collins caused her to be terminated from her employment, and her belief that Paula Meade Hill Collins would likely undermine the child parent relationship with the Minor Child.

20. During the pendency of the litigation in the Wise County Juvenile & Domestic Relations District Court, Counsel for Paula Meade Hill Collins and Michael Meade stipulated that Haley Marie Cantrell Adkins was a proper and fit parent of the Minor Child.

21. During the pendency of the litigation in the Wise County Juvenile & Domestic Relations District Court, Counsel for Paula Meade Hill Collins and Michael Meade argued that, notwithstanding the above stipulation, Haley Marie Cantrell Adkins had no Constitutional Rights that were applicable to the matter, and instead, argued that the Court need only consider the "best interests of the child" standard.

22. The Wise County Juvenile & Domestic Relations District Court rejected the argument that Haley Marie Cantrell Adkins had no Constitutional Rights that were applicable to the matter, and required Paula Meade Hill Collins and Michael Meade to establish by clear and convincing evidence that "actual harm" must be proven, prior to the Court considering "best interests of the child" standard.

23. In 2021, Paula Meade Hill Collins successfully lobbied for an amendment to the Code of Virginia that would allow her Petition to be exempt from the burden of proving "actual harm", and the 2021 Virginia General Assembly enacted §20-124.2 (b) (2), which became effective on July 1, 2021, and reads as follows: "In any case or proceeding in which a grandparent has petitioned the court for visitation with a minor grandchild, and a natural or adoptive parent of the minor grandchild is deceased or incapacitated, the grandparent who is related to such deceased or incapacitated parent shall be permitted to introduce evidence of such parent's consent to visitation with the grandparent, in accordance with the rules of evidence. If the parent's consent is proven by a preponderance of the evidence, the court may then determine if grandparent visitation is in the best interest of the minor grandchild. For the purposes of this subsection, "incapacitated parent" has the same meaning ascribed to the term "incapacitated person" in § 64.2-2000."

24. In June 2021, Paula Meade Hill Collins and Michael Meade concluded their evidence in the Wise County Juvenile & Domestic Relations District Court. Counsel for Haley Marie Cantrell Adkins moved to dismiss the Petitions based on the Petitioners' failure to introduce any evidence that the Minor Child would suffer "actual harm" because they were denied visitation. The Wise County Juvenile & Domestic Relations District Court granted the Motion to Dismiss based on this failure.

25. Paula Meade Hill Collins and Michael Meade noted their appeal of this decision, and their Petitions are now pending in the Wise County Circuit Court.

26. Through their Counsel, Paula Meade Hill Collins and Michael Meade have announced their intention to invoke the newly enacted provision of §20-124.2 for the proposition

that they no longer have to establish "actual harm", and the Court need only use a preponderance of evidence burden of proof to establish that Court mandated visitation is in the best interests of the Minor Child.

27. Haley Marie Cantrell Adkins and Andrew Jordan Adkins have clearly established Constitutional Rights that protect them from any intervention by the Courts in Virginia, absent a compelling state interest. The compelling state interest is described by the judiciary as requiring a showing that the custodial parents are "unfit" or by establishing by clear and convincing evidenced that "actual harm" will occur absent Court Ordered visitation.

28. The enactment of §20-124.2 (b) (2) is violative of both the federal Constitutional Rights of Haley Marie Cantrell Adkins and Andrew Jordan Adkins, and the corresponding state Constitutional Rights of Haley Marie Cantrell Adkins and Andrew Jordan Adkins.

29. §20-124.2 (b) (2) is facially unconstitutional.

30. §20-124.2 (b) (2) is unconstitutional as it is being used by Paula Meade Hill Collins and Michael Meade in their attempt to seek the assistance of the Virginia Courts to gain visitation of the Minor Child over the united objections of the legal parents of the Minor Child.

31. There exists an actual justiciable controversy that requires this Court to declare that the enactment of §20-124.2 (b) (2) is violative of both the federal Constitutional Rights of Haley Marie Cantrell Adkins and Andrew Jordan Adkins, and the corresponding state Constitutional Rights of Haley Marie Cantrell Adkins and Andrew Jordan Adkins.

32. The unconstitutional application of §20-124.2 (b) (2) in the pending visitation requests in the Wise County Circuit Court will lead to irreparable harm to the federal Constitutional

   Rights of Haley Marie Cantrell Adkins and Andrew Jordan Adkins, and the corresponding state Constitutional Rights of Haley Marie Cantrell Adkins and Andrew Jordan Adkins.

33. Haley Marie Cantrell Adkins and Andrew Jordan Adkins retained a forensic expert, Dr. Dr. Lawhon, who is a licensed forensic psychologist, and has been asked to give expert opinions in custody issues over the course of his 20 plus years of practicing forensic psychology. Dr. Lawhon has provided expert testimony in the past, including matters in both federal and state courts, and in the courts in Virginia, Tennessee, Arizona and Florida. His forensic psychology practice includes working with children of all ages.

34. Dr. Lawhon conducted a well recognized forensic evaluation of the minor child and mother as it relates to the legal issues in this case. He has done his own research on the legal issues and is familiar with written articles that would be applicable to the legal issues as they pertain to the field of forensic psychology. The subject matter of Dr. Lawhon's testimony is within the field of forensic psychology, and in particular, what harm if any is DSA suffering from as a result of the death of his father, what harm if any is DSA suffering from as a result of the current lack of visitation or contact with the Petitioners, what harm if any will DSA suffer if the Court does not grant visitation and what harm if any will DSA suffer if the Court does grant visitation. The following is the substance of the facts and opinions of Dr. Lawhon: (1) Forensic Psychology is the well recognized scientific discipline that addresses the legal issues that are the subject of his litigation, and forensic psychologists who practice child psychology are the best persons to properly evaluate and assess children that are the subject of custody disputes to aid the courts in their decision making; (2) There are no well recognized authoritative treatises

that support any opinion or conclusion that DSA will suffer actual harm if the Petitioners are denied visitation with DSA. The current literature suggests that court ordered visitation in this type of case in favor of grandparents are more likely to be harmful. While there is some literature that will discuss statistical studies on adverse effects on children of certain trauma in their lives, it is not appropriate to take that statistical data and then extrapolate it to a certain child. Statistical studies that have looked at emotional harms from the death of a parent are not a credible predictor for DSA. Each case has its own unique circumstances. (3) DSA will not suffer actual harm if the Petitioners are denied visitation with DSA. (4) Emotionally, DSA is a well developed child, and he does not suffer any clinically identifiable or demonstrated emotional trauma as the result of his father's death in January 2020. (5) It is always a possibility that a sudden death of a parent could cause issues for a young child that will need professional intervention that could last for extended periods of time. However, in this case it would be speculative at best to suggest that DSA would fall within this category. The much more probable prognosis for DSA is quite the opposite. It is extremely unlikely that DSA will need professional intervention as a result of his father's death. (6) DSA's mother appears to have addressed the issue of DSA's father's death in an appropriate way. (7) DSA is more likely to suffer some emotional harm as a result of these proceedings. Contested custody litigation is well recognized as creating harmful experiences in children, and in the context of when a grandparent initiates these proceedings, the very real risk is created that adversely affects the parental child relationship, to the detriment of the child. (8) There is no credible evidence that DSA has created a significant bond with either Petitioner.

35. The bases for Dr. Lawhon's opinions and a summary of the grounds for each of Dr. Lawhon's opinions include the following: (A) his education in the field of forensic psychology; (B) his training in the field of forensic psychology; (C) his years of experience in the field of forensic psychology; (D) his review of written articles that are considered authoritative in the field of forensic psychology; (E) his examination and evaluation of DSA; (F) his examination and evaluation of Haley Cantrell Adkins; (G) the history obtained from both DSA and Haley Cantrell Adkins; (H) the age of the child now and the time line of when he last had contact with either Petitioner; (I) the length of time that has elapsed since DSA had any meaningful contact with either Petitioner; (J) the fact that the mother has been the primary person to assume parental duties for a long period of time, without either Petitioner exercising meaningful visitation with DSA; (k) the fact that the mother reported that DSA is healthy, both emotionally and physically, and that he is doing well in school without any reports of issues that would be signs that he is suffering any form of emotional harm.

## COUNT 1: 42 USC §1983 CLAIM

36. The Plaintiffs re-allege Paragraphs 1 through 35.

37. In 1998, the Virginia Supreme Court declared that parents have a Fourteenth Amendment Constitutional Right when issues of parenting are presented to a court by a person seeking visitation. *Williams v Williams*, 256 Va. 19 (1998). Clear and convincing evidence is required to establish that the denial of visitation would result in actual harm to the child's health and welfare.

38. In 2000, the United States Supreme Court affirmed the Washington Supreme Court's decision and Supreme found that the Fourteenth Amendment Constitutional Right to Due

        Process is violated if the state interferes with parents' decisions concerning the care, custody and control of their children, without a showing of harm to the Minor Child. *Troxel v. Granville*, 530 U.S. 57 (2000).

39. Since the decision in *Williams* and *Troxell*, the Virginia Court of Appeals has steadfastly adhered to the "actual harm" standard in cases where third parties seek visitation over the objection of the parents. *Griffin v Griffin*, 41 Va. App.77 (2003); *O'Leary v. Moore*, 2033 WL 21524689 Unpublished Opinion: Virginia Court of Appeals: 2003) *Richter v Manning*, 2013 WL 1897657 (Unpublished Opinion: Virginia Court of Appeals: 2013); *Melton v Melton*, 94 Cir. 305 (2016).

40. §20-124.2 (b) (2) is facially unconstitutional.

41. §20-124.2 (b) (2) is unconstitutional as it is being used and applied by Paula Meade Hill Collins and Michael Meade in their attempt to seek the assistance of the Virginia Courts to gain visitation of the Minor Child over the united objections of the legal parents of the Minor Child.

## COUNT 2: STATE CONSTITUTIONAL CLAIM

42. The Plaintiffs re-allege Paragraphs 1 through 41.

43. The Due Process Clause of the Virginia Constitution provides the same rights to the Plaintiffs as the Fourteenth Amendment to the United States Constitution.

44. §20-124.2 (b) (2) violates the Plaintiffs Due Process Rights of the Virginia Constitution.

45. §20-124.2 (b) (2) violates the Plaintiffs Due Process Rights of the Virginia Constitution as it is being used and applied by Paula Meade Hill Collins and Michael Meade in their attempt to seek the assistance of the Virginia Courts to gain visitation of the Minor Child over the united objections of the legal parents of the Minor Child.

## COUNT 3: DECLARATORY ACTION CLAIM

46. The Plaintiffs re-allege Paragraphs 1 through 45.

47. Plaintiffs are entitled to have this Court adjudicate the constitutionality of §20-124.2 (b) (2).

## COUNT 4: INJUNCTIVE RELIEF CLAIM

48. The Plaintiffs re-allege Paragraphs 1 through 45.

49. Plaintiffs are entitled to have this Court grant both a temporary and permanent injunction for any Virginia Court to apply the provisions of §20-124.2 (b) (2).

## COUNT 5: ATTORNEYS FEES CLAIM

50. The Plaintiffs re-allege Paragraphs 1 through 45.

51. Plaintiffs are entitled to have their attorneys' fees and costs paid pursuant to 42 USC §1988.

WHEREFORE, Paula Meade Hill Collins and Michael Meade, by Counsel, hereby prays for the following relief:

(A) For an Order declaring that §20-124.2 (b) (2) violates both the United States Constitution and Virginia Constitution.

(B) For a Temporary Injunction Order and Permanent Injunction Order enjoining the use of §20-124.2 (b) (2);

(C) For an Order requiring the Commonwealth of Virginia to pay the Plaintiffs attorneys fees and costs pursuant to 42 USC §1988.

(D) For an order awarding the Plaintiffs such other legal and equitable relief as this Court deems just and proper.

HALEY MARIE CANTRELL ADKINS & ANDREW JORDAN ADKINS
BY COUNSEL

*/s/ Timothy W. McAfee*
_____
Timothy W. McAfee
Virginia State Bar Number: 21779
Attorney for: **Haley Adkins & Andrew Adkins**
McAfee Law Firm, PLLC
408 Wood Avenue E
P.O. Box 610
Big Stone Gap, VA 24219
Telephone: (276) 523-5300
Fax: (540) 301-5777
E-mail: tim@mcafee-law.com