IN THE
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
BIG STONE GAP DIVISION

HALEY MARIE CANTRELL ADKINS                             PLAINTIFF

ANDREW JORDAN ADKINS                                    PLAINTIFF

v. v. Case No. 2:21-cv-00031-JPJ-PMS

PAULA MEADE HILL COLLINS                                DEFENDANT

MICHAEL MEADE                                           DEFENDANT

## PLAINTIFF'S FIRST AMENDED COMPLAINT

COMES NOW, Haley Marie Adkins and Andrew Adkins, by Counsel, and hereby submits the following in support of their Complaint.

## PARTIES

1. Haley Marie Adkins and Andrew Adkins are citizens of Virginia, and reside in Wise County, Virginia.

2. Paula Meade Hill Collins and Michael Meade are citizens of Virginia, and reside in Wise County, Virginia.

3. Haley Marie Cantrell Adkins is the biological mother of DSA, who is a Minor Child.

4. Andrew Jordan Adkins is the legal father of DSA, as a result of a Final Order of Adoption entered on July 30, 2021 by the Wise County Circuit Court.

5. Paula Meade Hill Collins is the biological mother of David Shane Meade.

6. Michael Meade is the adoptive father of David Shane Meade.

## JURISDICTION & VENUE

7. At all times relevant to this proceeding, the acts that give rise to this Complaint occurred and are occurring in Wise County Virginia.

8. Venue is proper pursuant to 28 USC §1391.

9. This Court has jurisdiction pursuant to 28 USC §1331, 42 USC §1983 and 42 USC §1985 (3).

10. This Court has jurisdiction of this matter pursuant 28 U.S.C. §1367 to address any pendent state claims.

## FACTS & LEGAL CONCLUSIONS

11. David Shane Meade was the biological father of DSA.

12. David Shane Meade died on January 6, 2020.

13. Prior to the death of the David Shane Meade, divorce proceedings were pending in the Wise County Circuit Court between Haley Marie Adkins and David Shane Meade.

14. Prior to the death of the David Shane Meade, there were multiple Protective Orders entered by the Wise County Juvenile & Domestic Relations District Court against David Shane Meade in favor of Haley Marie Adkins as a result of David Shane Meade's substance abuse.

15. Prior to the death of the David Shane Meade, David Shane Meade was the suspect in a firearms investigation where multiple gun shots were fired into the vehicle of his mother, Paula Meade Hill Collins.

16. David Shane Meade had an ongoing acrimonious relationship with his mother, Paula Meade Hill Collins.

17. Prior to the death of the David Shane Meade, David Shane Meade had limited contact with the Minor Child, and did not have overnight visitation with the Minor Child.

18. From early 2019, Haley Marie Cantrell Adkins had been the sole primary physical custodian of the minor child.

19. In June 2020, Paula Meade Hill Collins and Michael Meade filed Petitions in the Wise County Juvenile & Domestic Relations District Court seeking to have the Court Order Haley Marie Adkins to permit visitation with the Minor Child.

20. Haley Marie Adkins objected to the request, relying upon her Constitutional Rights, and other factors, including the mental instability of Paula Meade Hill Collins, the acrimonious relationship that existed between Paula Meade Hill Collins and her, the fact that Paula Meade Hill Collins caused her to be terminated from her employment, and her belief that Paula Meade Hill Collins would likely undermine the child parent relationship with the Minor Child.

21. During the pendency of the litigation in the Wise County Juvenile & Domestic Relations District Court, Counsel for Paula Meade Hill Collins and Michael Meade stipulated that Haley Marie Cantrell Adkins was a proper and fit parent of the Minor Child.

22. During the pendency of the litigation in the Wise County Juvenile & Domestic Relations District Court, Counsel for Paula Meade Hill Collins and Michael Meade argued that, notwithstanding the above stipulation, Haley Marie Cantrell Adkins had no Constitutional Rights that were applicable to the matter, and instead, argued that the Court need only consider the "best interests of the child" standard.

23. The Wise County Juvenile & Domestic Relations District Court rejected the argument that Haley Marie Cantrell Adkins had no Constitutional Rights that were applicable to the

matter, and required Paula Meade Hill Collins and Michael Meade to establish by clear and convincing evidence that "actual harm" would occur, prior to the Court considering "best interests of the child" standard.

24. In June 2021, Paula Meade Hill Collins and Michael Meade concluded their evidence in the Wise County Juvenile & Domestic Relations District Court.

25. Counsel for Haley Marie Cantrell Adkins moved to dismiss the Petitions based on the Petitioners' failure to introduce any evidence that the Minor Child would suffer "actual harm" because they were denied visitation. The Wise County Juvenile & Domestic Relations District Court granted the Motion to Dismiss based on this failure.

26. On or about the early part of 2021, Paula Meade Hill Collins began to lobby vigorously for an amendment to the Code of Virginia that would allow her Petition to be exempt from the burden of proving "actual harm", which efforts included communications with multiple members of the Virginia General Assembly to gain support for her crusade to obtain legislation that would undermine the "actual harm" standard.

27. Paula Meade Hill Collins willfully met with individual members of the General Assembly in a joint effort to enact §20-124.2 (b) (2).

28. As a proximate cause of the efforts of Paula Meade Hill Collins, the 2021 Virginia General Assembly enacted §20-124.2 (b) (2), which became effective on July 1, 2021, and reads as follows: "In any case or proceeding in which a grandparent has petitioned the court for visitation with a minor grandchild, and a natural or adoptive parent of the minor grandchild is deceased or incapacitated, the grandparent who is related to such deceased or incapacitated parent shall be permitted to introduce evidence of such parent's consent to visitation with the grandparent, in accordance with the rules of evidence. If the

parent's consent is proven by a preponderance of the evidence, the court may then determine if grandparent visitation is in the best interest of the minor grandchild. For the purposes of this subsection, "incapacitated parent" has the same meaning ascribed to the term "incapacitated person" in § 64.2-2000."

29. Paula Meade Hill Collins and Michael Meade noted their appeal of the June 2021 decision of the Wise County J&DR District Court, and their Petitions are now pending in the Wise County Circuit Court.

30. Paula Meade Hill Collins and Michael Meade have announced their intention to enforce the newly enacted provision of §20-124.2 for the proposition that they no longer have to establish "actual harm", and the Court need only use a preponderance of evidence burden of proof to establish that Court mandated visitation is in the best interests of the Minor Child.

31. With the aid of the Virginia Courts, Paula Meade Hill Collins and Michael Meade are actively engaged in the use of the newly enacted statutory provisions.

32. Paula Meade Hill Collins and Michael Meade are aided in their efforts by the appointment of a Court Ordered Guardian *ad litem,* who likewise argues for the use of the "best interests" standard, as opposed to the "actual harm" standard that is mandated by both the Virginia Constitution and the United States Constitution.

33. It is only by the use of the newly enacted statutory provisions created by the joint efforts of the Defendants and members of the Virginia General Assembly, and their continued use of the Virginia Courts that Paula Meade Hill Collins and Michael Meade are able to undermine the Constitutional Rights of Haley Marie Cantrell Adkins and Andrew Jordan Adkins.

34. The creation of the new procedural provisions found in §20-124.2 (b) (2) is the result of "state action" as that term is used in 42 USC §1983

35. Beginning on or about the early part of 2021, Paula Meade Hill Collins and Michael Meade schemed, conspired and acted in concert together to deprive Haley Marie Cantrell Adkins and Andrew Jordan Adkins of the Constitutional rights as guaranteed by the Fourteenth Amendment and the Due Process Clauses.

36. Paula Meade Hill Collins and Michael Meade schemed, conspired and acted in concert together to have the Virginia General Assembly enact new provisions that would undermine the Constitutional Rights of Haley Marie Cantrell Adkins and Andrew Jordan Adkins.

37. This scheme and conspiracy included vigorous lobbying efforts.

38. This scheme and conspiracy the enactment of new statute that abolished the "actual harm" standard.

39. This scheme and conspiracy included the enactment of new statute that provided for a less onerous burden of proof standard.

40. This scheme and conspiracy included making attempts to continue the case in the Wise County J&DR Court until after July 1, 2021.

41. This scheme and conspiracy included the use of the Virginia Courts to apply the new procedural provisions found in §20-124.2 (b) (2).

42. This scheme and conspiracy included that both would act together to accomplish the goal of the scheme and conspiracy.

43. The actual fruits of this scheme and conspiracy occurred: (A) vigorous lobbying efforts were used; (B) through the lobbying efforts of Paula Meade Hill Collins, the General

Assembly enacted §20-124.2 (b) (2); (C) Paula Meade Hill Collins and Michael Meade retained additional Counsel just prior to the hearing date in June 2021 in an effort to have the J&DR Court continue the case until after July 1, 2021; (D) Paula Meade Hill Collins and Michael Meade are actively seeking to enforce the newly enacted §20-124.2 (b) (2).

44. The current continued litigation by Paula Meade Hill Collins and Michael Meade is causing injury and damages to Haley Marie Cantrell Adkins and Andrew Jordan Adkins, to include but not limited to the following: (A) emotional damages; (B) economic injury, including attorneys fees and expert witness fees; and (C) nominal damages for the violation of their Constitutional Rights.

45. Haley Marie Cantrell Adkins and Andrew Jordan Adkins have clearly established Constitutional Rights that protect them from any intervention by the Courts in Virginia, absent a compelling state interest. The compelling state interest is described by the judiciary as requiring a showing that the custodial parents are "unfit" or by establishing by clear and convincing evidence that "actual harm" will occur absent Court Ordered visitation.

46. The enactment of §20-124.2 (b) (2) is violative of both the federal Constitutional Rights of Haley Marie Cantrell Adkins and Andrew Jordan Adkins, and the corresponding state Constitutional Rights of Haley Marie Cantrell Adkins and Andrew Jordan Adkins.

47. §20-124.2 (b) (2) is facially unconstitutional.

48. §20-124.2 (b) (2) is unconstitutional as it is being used by Paula Meade Hill Collins and Michael Meade in their attempt to seek the assistance of the Virginia Courts to gain visitation of the Minor Child over the united objections of the legal parents of the Minor Child.

49. There exists an actual justiciable controversy that requires this Court to declare that the enactment of §20-124.2 (b) (2) is violative of both the federal Constitutional Rights of Haley Marie Cantrell Adkins and Andrew Jordan Adkins, and the corresponding state Constitutional Rights of Haley Marie Cantrell Adkins and Andrew Jordan Adkins.

50. The unconstitutional attempted enforcement by Paula Meade Hill Collins and Michael Meade of §20-124.2 (b) (2) in the pending litigation in the Wise County Circuit Court will lead to irreparable harm, including harm to the Minor Child.

51. Haley Marie Cantrell Adkins and Andrew Jordan Adkins retained a forensic expert, Dr. Dr. Lawhon, who is a licensed forensic psychologist, and has been asked to give expert opinions in custody issues over the course of his 20 plus years of practicing forensic psychology. Dr. Lawhon has provided expert testimony in the past, including matters in both federal and state courts, and in the courts in Virginia, Tennessee, Arizona and Florida. His forensic psychology practice includes working with children of all ages.

52. Dr. Lawhon conducted a well recognized forensic evaluation of the minor child and mother as it relates to the legal issues in this case. He has done his own research on the legal issues and is familiar with written articles that would be applicable to the legal issues as they pertain to the field of forensic psychology. The subject matter of Dr. Lawhon's testimony is within the field of forensic psychology, and in particular, what harm if any is DSA suffering from as a result of the death of his father, what harm if any is DSA suffering from as a result of the current lack of visitation or contact with the Petitioners, what harm if any will DSA suffer if the Court does not grant visitation and what harm if any will DSA suffer if the Court does grant visitation. The following is the substance of the facts and opinions of Dr. Lawhon: (1) Forensic Psychology is the well

recognized scientific discipline that addresses the legal issues that are the subject of his litigation, and forensic psychologists who practice child psychology are the best persons to properly evaluate and assess children that are the subject of custody disputes to aid the courts in their decision making; (2) There are no well recognized authoritative treatises that support any opinion or conclusion that DSA will suffer actual harm if the Petitioners are denied visitation with DSA. The current literature suggests that court ordered visitation in this type of case in favor of grandparents are more likely to be harmful. While there is some literature that will discuss statistical studies on adverse effects on children of certain trauma in their lives, it is not appropriate to take that statistical data and then extrapolate it to a certain child.  Statistical studies that have looked at emotional harms from the death of a parent are not a credible predictor for DSA. Each case has its own unique circumstances. (3) DSA will not suffer actual harm if the Petitioners are denied visitation with DSA. (4) Emotionally, DSA is a well developed child, and he does not suffer any clinically identifiable or demonstrated emotional trauma as the result of his father's death in January 2020. (5) It is always a possibility that a sudden death of a parent could cause issues for a young child that will need professional intervention that could last for extended periods of time. However, in this case it would be speculative at best to suggest that DSA would fall within this category. The much more probable prognosis for DSA is quite the opposite. It is extremely unlikely that DSA will need professional intervention as a result of his father's death. (6) DSA's mother appears to have addressed the issue of DSA's father's death in an appropriate way. (7) DSA is more likely to suffer some emotional harm as a result of these proceedings. Contested custody litigation is well recognized as creating harmful experiences in children, and in the

context of when a grandparent initiates these proceedings, the very real risk is created that adversely affects the parental child relationship, to the detriment of the child. (8) There is no credible evidence that DSA has created a significant bond with either Petitioner.

53. The bases for Dr. Lawhon's opinions and a summary of the grounds for each of Dr. Lawhon's opinions include the following: (A) his education in the field of forensic psychology; (B) his training in the field of forensic psychology; (C) his years of experience in the field of forensic psychology; (D) his review of written articles that are considered authoritative in the field of forensic psychology; (E) his examination and evaluation of DSA; (F) his examination and evaluation of Haley Cantrell Adkins; (G) the history obtained from both DSA and Haley Cantrell Adkins; (H) the age of the child now and the time line of when he last had contact with either Petitioner; (I) the length of time that has elapsed since DSA had any meaningful contact with either Petitioner; (J) the fact that the mother has been the primary person to assume parental duties for a long period of time, without either Petitioner exercising meaningful visitation with DSA; (k) the fact that the mother reported that DSA is healthy, both emotionally and physically, and that he is doing well in school without any reports of issues that would be signs that he is suffering any form of emotional harm.

## COUNT 1: 42 USC §1983 CLAIM

54. The Plaintiffs re-allege Paragraphs 1 through 53.

55. In 1998, the Virginia Supreme Court declared that parents have a Fourteenth Amendment Constitutional Right when issues of parenting are presented to a court by a person seeking visitation. *Williams v Williams*, 256 Va. 19 (1998). Clear and convincing

evidence is required to establish that the denial of visitation would result in actual harm to the child's health and welfare.

56. In 2000, the United States Supreme Court affirmed the Washington Supreme Court's decision and the Supreme Court found that the Fourteenth Amendment Constitutional Right to Due Process is violated if the state interferes with parents' decisions concerning the care, custody and control of their children, without a showing of harm to the Minor Child. *Troxel v. Granville*, 530 U.S. 57 (2000).

57. Since the decision in *Williams* and *Troxell*, the Virginia Court of Appeals has steadfastly adhered to the "actual harm" standard in cases where third parties seek visitation over the objection of the parents. *Griffin v Griffin*, 41 Va. App.77 (2003); *O'Leary v. Moore*, 2033 WL 21524689 Unpublished Opinion: Virginia Court of Appeals: 2003) *Richter v Manning*, 2013 WL 1897657 (Unpublished Opinion: Virginia Court of Appeals: 2013); *Melton v Melton*, 94 Cir. 305 (2016).

58. §20-124.2 (b) (2) is facially unconstitutional.

59. §20-124.2 (b) (2) is unconstitutional as it is being used and applied by Paula Meade Hill Collins and Michael Meade in their attempt to seek the assistance of the Virginia Courts to gain visitation of the Minor Child over the united objections of the legal parents of the Minor Child.

60. Paula Meade Hill Collins and Michael Meade acted under "color of law" in their efforts to both enact §20-124.2 (b) (2) and seek application of §20-124.2 (b) (2) in the pending litigation in the Wise County Circuit Court.

61. Paula Meade Hill Collins and Michael Meade are "state actors" for purposes of 42 USC §1983.

## COUNT 2: 42 USC §1985 (3) CLAIM

62. The Plaintiffs re-allege Paragraphs 1 through 61.

63. Paula Meade Hill Collins and Michael Meade conspired to deprive the Plaintiffs of their Due Process Rights.

64. Paula Meade Hill Collins and Michael Meade violated 42 USC §1985 (3)

## COUNT 3: STATE CONSTITUTIONAL CLAIM

65. The Plaintiffs re-allege Paragraphs 1 through 61.

66. The Due Process Clause of the Virginia Constitution provides the same rights to the Plaintiffs as the Fourteenth Amendment to the United States Constitution.

67. §20-124.2 (b) (2) violates the Plaintiffs Due Process Rights of the Virginia Constitution.

68. §20-124.2 (b) (2) violates the Plaintiffs Due Process Rights of the Virginia Constitution as it is being used and applied by Paula Meade Hill Collins and Michael Meade in their attempt to seek the assistance of the Virginia Courts to gain visitation of the Minor Child over the united objections of the legal parents of the Minor Child.

## COUNT 4: DECLARATORY ACTION CLAIM

69. The Plaintiffs re-allege Paragraphs 1 through 61.

70. Plaintiffs are entitled to have this Court adjudicate the constitutionality of §20-124.2 (b) (2).

71. §20-124.2 (b) (2) violates both the federal Constitutional Rights of Haley Marie Cantrell Adkins and Andrew Jordan Adkins, and the corresponding state Constitutional Rights of Haley Marie Cantrell Adkins and Andrew Jordan Adkins.

## COUNT 5: INJUNCTIVE RELIEF CLAIM

72. The Plaintiffs re-allege Paragraphs 1 through 61.

73. Plaintiffs are entitled to have this Court grant both a temporary and permanent injunction for the Plaintiffs to seek enforcement of §20-124.2 (b) (2) in the pending litigation in the Wise County Circuit Court.

## COUNT 5: ATTORNEYS FEES CLAIM

74. The Plaintiffs re-allege Paragraphs 1 through 61.

75. Plaintiffs are entitled to have their attorneys' fees and costs paid pursuant to 42 USC §1988.

WHEREFORE, Haley Marie Cantrell Adkins and Andrew Jordan Adkins, by Counsel, hereby prays for the following relief:

(A) For an Order declaring that §20-124.2 (b) (2) violates both the United States Constitution and Virginia Constitution;

(B) For a Temporary Injunction Order and Permanent Injunction Order enjoining the Defendants from seeking application of §20-124.2 (b) (2);

(C) For an Order requiring the Defendants to pay the Plaintiffs' attorneys fees and costs pursuant to 42 USC §1988; and

(D) For an order awarding the Plaintiffs reasonable damages and such other legal and equitable relief as this Court deems just and proper.

HALEY MARIE CANTRELL ADKINS & ANDREW JORDAN ADKINS
BY COUNSEL

/s/ *Timothy W McAfee*
Timothy W. McAfee
Virginia State Bar Number: 21779
Attorney for: **Haley Adkins & Andrew Adkins**
McAfee Law Firm, PLLC
408 Wood Avenue E
P.O. Box 610
Big Stone Gap, VA 24219
Telephone: (276) 523-5300
Fax: (540) 301-5777
E-mail: tim@mcafee-law.com

**CERTIFICATE OF SERVICE**

I, Timothy W. McAfee, do hereby certify that on **November 2, 2021** a copy of the foregoing **1st Amended Complaint** was **electronically filed** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all Counsel of Record.

*/s/ TIMOTHY W. McAFEE*